UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

In re:

                                                                                                                 Chapter 13
                                                                                                                 Case No. 07-12568

JESSE P. KASKA,
                        Debtor.
--------------------------------------------------------
APPEARANCES:

O'CONNELL AND ARONOWITTZ, P.C.                William A. Favreau, Esq.
*Attorneys for the Debtor*
206 West Bay Plaza
Plattsburgh, New York 12901

GASPAR AND SMITH, PLLC                            Yuri J. Gaspar, Esq.
*Attorney for Creditor*
2284 Saranac Avenue
Lake Placid, NY 12946

Hon. Robert E. Littlefield Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Before the court is the motion filed by Sandra Danussi, creditor, objecting to the application of the homestead exemption pursuant to 11 U.S.C. § 522(f)[1] to real property owned by Jesse P. Kaska, debtor, on the grounds that the property is of mixed residential and commercial use, and that Kaska defrauded Danussi in claiming the exemption pursuant to § 522(o).

## FACTS

In the summer of 2002, Jesse Kaska approached his aunt, Sandra Danussi, and her husband proposing that they invest in his plan to open a used car and ATV dealership in Ellenburg Center, New York. Danussi required Kaska to provide a business plan and procure the deed to the land where the dealership would be built before they would provide funding. Kaska

---
[1] Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

1

complied with these requests, securing title to 6061 Route 11, Ellenburg Center, New York, 12934 ("Route 11 Property") from his father. In August 2002, Kaska received $100,000.00 from Danussi and executed a promissory note agreeing to repay the loan within eighteen months of its execution. The parties intended the Route 11 Property to stand as collateral for the loan, but they never executed a valid mortgage agreement. Kaska failed to pay off the loan during its eighteen-month term.

In March 2005, Kaska sent Danussi a letter indicating that the snowmobile business had slowed, but that he was making money rehabilitating older cars. In the letter, he asked Danussi what she wanted to do about the loan. He indicated that he had acquired another piece of land, had started building a house on it, and had nearly $40,000 invested in the project. He suggested in the letter that once the house was completed he would mortgage the property and repay the loan. In April 2005, the parties executed a new promissory note mandating complete repayment "no later than April 5, 2006." The new promissory note also held that the Route 11 Property would continue to stand as collateral for the transaction, but again the parties failed to execute a valid mortgage agreement.

On May 31, 2005, Danussi sent Kaska a summary letter outlining the history of the loan and promissory notes. The letter also asserted that Danussi had the right to review and approve any proposed building alternations or change of use of the Route 11 Property or building for any purpose other than automotive sales and repairs. Danussi requested that Kaska review the letter with his legal counsel and then sign and return it if he agreed her assertions in the letter were accurate. Danussi testified that she sent the letter upon learning that Kaska had begun building an apartment in the snowmobile showroom at the Route 11 Property.

Kaska signed and returned the letter on June 6, 2005 writing that he anticipated paying the first half of the principal on October 5, 2005, per the new promissory note. He also informed Danussi that he had commenced renovations at the Route 11 Property nearly three weeks prior, converting the snowmobile showroom into an apartment for himself. Kaska later testified that he had decided to discontinue construction of the proposed home because the business was not doing well. After completing the apartment, Kaska took up residence in either late June or early July 2005, and continues to reside there.

Kaska did not make his scheduled payment of principal on October 5, 2005. While Kaska does not remember exactly when the dealership ceased to do business, its license to sell cars expired in March of 2006. In his testimony, Kaska indicated that after he stopped doing business at the Route 11 Property, he briefly stored some junked cars on his lot in June 2006 for the township. Then, in October or November of 2006, Kaska started working for Tony's Ticonderoga Sports. He continued to make intermittent interest payments to Danussi until early 2007, leaving the loan paid through December 2006.

On June 19, 2007, Danussi obtained a judgment awarding her the full amount due on the loan from the New York State Supreme Court for Essex County. She then filed her judgment with the Essex County clerk creating a lien on the Route 11 Property for the full amount of the judgment. Kaska subsequently filed for bankruptcy on September 26, 2007. In his Schedule A, Kaska declared the value of the Route 11 Property to be $92,500.00. Kaska claimed a homestead exemption of $50,000 against the Route 11 Property in his Schedule C.

Danussi subsequently filed a motion objecting to the application of the homestead exemption to the Route 11 Property. Kaska responded, and the court held a hearing on September 8, 2008. At the hearing, Danussi testified on her own behalf concerning her

agreement with Kaska and why the homestead exemption should not apply to the Route 11 property. Kaska then testified on his own behalf regarding the agreement with his aunt and presented evidence supporting his position that the Route 11 Property should be exempt. At the conclusion of the hearing, the court provided the parties with the opportunity to submit post-hearing memoranda.

## ARGUMENT

Danussi objects to the application of the homestead exemption to the Route 11 Property, alleging two alternative theories for its denial. The first is predicated upon *Hager*, in which the court held that a debtor occupying a premises that served as both his home and a commercial enterprise may only take advantage of the homestead exemption for the portion of the property used as a home. *In re Hager*, 74 B.R. 198 (Bankr. N.D.N.Y. 1987), *aff'd*, 90 B.R. 584 (N.D.N.Y. 1988). The second theory for denial of the exemption is based upon 11 U.S.C. § 522(o), which provides for the inapplicability of the homestead exemption under facts amounting to fraud on behalf of the debtor. Danussi alleges that Kaska converted the Route 11 Property, an otherwise non-exempt commercial property, into a homestead within ten years of filing with the intent to defraud her. Specifically, Danussi alleges that Kaska built and occupied the apartment at the Route 11 Property without her consent or approval while he was insolvent. Furthermore, Danussi argues that Kaska fabricated his story about building a house in order to obtain an extension for his loan payments. Finally, Danussi alleges that Kaska occupied the Route 11 Property after he had defaulted on his loan obligation, and about the same time she sought a judgment lien on the property. These allegations form the basis for Danussi's argument that Kaska occupied the property as a means to frustrate her claim.

4

Kaska disputes these assertions. With regard to the potential mixed commercial and residential use of the Route 11 Property, Kaska argues that the *Hager* case is distinguishable on the basis that no commercial enterprise was taking place when he filed for bankruptcy. Moreover, he had ceased doing business at the Route 11 Property nearly a year and a half before filing his petition. Regarding the § 522(o) claim, Kaska argues that Danussi has failed to prove any element of the statute, most notably actual intent to defraud.

## DISCUSSION

Pursuant to 11 U.S.C. § 522(b)(1), any state may opt out of the federal exemption scheme and choose instead to provide its own exclusive set of exemptions for debtors domiciled in that state. New York has chosen to opt out of the federal exemption scheme. N.Y. Debt & Cred. Law §§ 282, 284; *In re Nudo*, 147 B.R. 68, 70 (Bankr. N.D.N.Y. 1992). The New York State homestead exemption provides:

> Property of one of the following types, not exceeding fifty thousand dollars in value above liens and encumbrances, owned and occupied as a principle residence, is exempt from application to the satisfaction of a money judgment unless the judgment is recovered wholly for the purchase price thereof: a lot with a dwelling thereon . . . .

N.Y. Civ. Proc. Law & Rul. § 5206(a).

The Route 11 Property facially complies with the requirements of § 5206(a), but the exemption may be inapplicable under either of the two aforementioned theories for denial that Danussi alleges. The court shall thus address each of these theories in turn.

1. *Mixed Commercial and Residential Use of Property Covered by the Homestead Exemption*

The nation's bankruptcy courts are not of one mind when it comes to the applicability of homestead exemptions to "mixed use" property. *Compare In re Ruggles*, 210 B.R. 57, 60 (Bankr. D.Vt. 1997) (entire duplex is exempt, including rented portion), *and In re Patten*, 71

5

B.R. 574, 576 (Bankr. D.N.D. 1987) (entire building exempt, though debtor only occupied a portion), *and Wells v. West Greeley National* Bank, 29 B.R. 688, 690 (Bankr. D.Colo. 1983) (entire duplex exempt, though only partially occupied), *with In re Klein*, 272 B.R. 807 (Bankr. M.D. Fla. 2002) (exemption does not cover detached guesthouse that was rented seasonally); *and In re Shillingglaw*, 81 B.R. 910, 912 (Bankr. D.N.H. 1994) (exemption only applied to hotel rooms occupied by debtor). In fact, the districts of New York are not even unified in approach. *Compare In re Hager*, 74 B.R.198 (exemption limited to non-commercial aspect of residence), *and In re Vizentinis*, 175 B.R. 824, 826 (Bankr. E.D.N.Y. 1994) (entire apartment building exempt). Danussi argues that the standard evoked in *Hager*—that a homestead exemption should only be allowed for the percentage of the premises that was residential—is controlling in this court.

The *Hager* case involved a chiropractor who had an office with a separate entrance in his home where he saw patients. *Id.* at 200. At the time of filing, Hager was still seeing patients at this office and, after filing, started a new career as a Baptist minister while consulting patients gratis in his home office. *Id.* The *Hager* court thus entered into a mathematical analysis determining the percentage of the home that was office space, allocated to it the appropriate amount of equity left in the property, subtracted the non-filing spouse's one-half interest in that equity, and granted a judgment lien on the remainder. *Id.* at 201-02.

Danussi asks the court to extend this complex analysis to the facts of this case. The court declines to do so. The matter at hand is distinguished by the fact that Kaska had ceased all commercial activity on the premises at the time of filing. Moreover, aside from briefly parking some junked cars for the town in his lot in June 2006, he derived no commercial benefit from the property for nearly a year and a half prior to his filing. During this time the premises was used

solely as his home. The court thus finds that there was no mixed use of the Route 11 Property at the time of filing and, therefore, the analysis laid down in *Hager* is inapplicable.

2. *Conversion of Non-exempt Property into Exempt Property in Violation of 11 U.S.C. § 522(o)*

11 U.S.C. § 522(o) seeks to counterbalance the effects of fraudulent conversion of non-exempt property into exempt property. The statute holds in pertinent part:

> [T]he value of an interest in . . . real or personal property that the debtor or a dependent of the debtor claims as a homestead . . . shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. §522(o). Section 522(o) contains four elements that must be demonstrated before an objection may be sustained. First, the debtor must have disposed of property within ten years of filing his bankruptcy petition. *In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007). Second, the property that debtor disposed of must have been non-exempt. *Id.* Third, at least some of the proceeds of the property's disposal must have been invested in debtor's homestead. *Id.* Fourth, and finally, the debtor must have disposed of the nonexempt property with the intent to hinder, delay, or defraud a creditor. *Id.*

Section 522(o) does not seek to recapture non-exempt property that was converted into exempt property without fraudulent intent. 4 *Collier on Bankruptcy* ¶522(5) (15th ed., 1996). Necessarily, the mere act of converting non-exempt property into exempt property does not carry a presumption of fraudulent intent. *See In re Wilmoth*, 2008 WL 5135721 (B.A.P. 8th Cir.); *In re Agnew*, 233 B.R. 276, 283 (Bankr. D. Kan. 2006); 4 *Collier on Bankruptcy* ¶522(5). Moreover, an objecting party must prove actual, rather than constructive intent to defraud, lest otherwise

7

innocent and permissible pre-petition planning be transformed into something nefarious. *In re Agnew*, 233 B.R. at 283.

In evaluating fraudulent intent, courts are rarely presented with direct evidence, and must thus rely instead on circumstantial evidence. Danussi advocates reliance on a "badges of fraud" standard, which marshals various pieces of evidence to arrive at a finding of fraudulent intent. *See In re Martin*, 208 B.R. 799 (N.D.N.Y. 1997) (finding that the "confluence of several 'badges of fraud' can constitute conclusive evidence of an actual intent to defraud"). Several other courts have applied the "badges of fraud" standard to § 522(o) and list various relevant badges. *In re Addison*, 540 F.3d 805 (8th Cir. 2008); *In re Kaiser*, 722 F.2d 1574, 1582 (2d. Cir. 1983). Neither the statute nor its legislative history provides for the more stringent clear and convincing evidentiary standard of proof and, thus, a preponderance of the evidence standard applies. *Cf. Grogan v. Garner*, 498 U.S. 279 (1991) (holding that in the absence of legislation to the contrary, preponderance of the evidence is the appropriate standard of proof for determining exceptions to discharge based on fraud). This court adopts the "badges of fraud" standard for finding actual intent to defraud in a matter under § 522(o), and thus the objecting party must prove such intent by a preponderance of the evidence.

Danussi alleges five badges of fraud:

i. Kaska transformed the commercial property into a residential property without her consent or approval;

ii. Kaska wrote a letter in March 2005 indicating that he was preparing to build a home on a separate piece of property, when he knew that to be untrue and related the story in order to obtain an extension for repayment of the loan;

iii. Kaska retained control of the property after building the apartment;

iv. Kaska took up residence on the property after he defaulted on his loan obligations and at about the same time he was sued by Danussi; and

8

    v. Kaska was insolvent at the time he built the apartment and took up residence therein.

The court finds the sum of these badges to be insufficient to justify a finding for Danussi under § 522(o).

  As to the first badge, although Kaska commenced construction of the apartment without informing Danussi of his actions or intentions, he was under no cognizable contractual obligation to do so.  There is no notification provision in the promissory note presented to the court, and while Danussi's letter of May 31, 2005 may amount to a valid modification under General Obligations Law § 5-1103, its effect could only conceivably be applied to alterations taking place after Kaska assented to it.  As it is clear in his reply that he had already commenced the construction when the modification was proposed, the project does not fall within its ambit.

  As to the second badge, Kaska's letter discussing the construction of a new home is admittedly confusing.  The court suspects that there is some truth in Danussi's assertion that Kaska discussed the construction (and exaggerated its progress) in order to assuage her concerns over his failure to meet his obligations.[2]  Nonetheless, the argument that this letter was part of a greater ruse to convert the Route 11 Property into a home in order to protect it from a bankruptcy filing over two years in the future strains credulity.  The parties' testimony and supporting documentation show Kaska to have been a genuinely sincere, albeit naïve, budding entrepreneur. Kaska hardly came across as a master of long term planning, leaving the court to believe that a complex multi-year scheme to defraud his aunt is likely beyond his ken.

---

[2] Kaska testified the land the house was to be built on was, in fact, owned by his mother, that $25,000 was a more accurate estimate of what he actually spent, and that while he intended to build the house it later became infeasible. Kaska did not testify as to whether his mother was to eventually convey title to him so that he could obtain the promised mortgage and repay Danussi.

9

Finally, as to the remaining badges, the court fails to see how Kaska's occupation of the apartment at a time of severe financial stress and possible insolvency constitutes a viable badge of fraud.  He was under no contractual obligation to inform Danussi of the construction or intention to live on the premises.  And, by all accounts, he continued to operate the business at that time.  The court is unconvinced that Kaska had any intention to file for bankruptcy at that juncture in light of his ongoing, albeit flagging, business and his continued interest payments to Danussi.  The coincidence of Kaska's increased financial woes and his decision to live in his place of business seems more to be a move of good financial sense (one of few in this case), rather than a step in a methodically planned descent into bankruptcy.  Furthermore, Danussi's assertion that Kaska took up residence about the same time she commenced her action against him is exaggerated at best, as he took up residence in July 2005 at the latest, and she commenced her proceeding in Essex County in April 2007.

The court does not accept these few and belabored badges of fraud as sufficient evidence that Kaska had the actual intent to defraud his creditors when he moved into the Route 11 Property over two years before filing for bankruptcy.

## CONCLUSION

In summary, Danussi's objection to Kaska's claimed homestead exemption is overruled.  It is SO ORDERED.

Dated:     Albany, New York
           January 14, 2009

/s/ Robert E. Littlefield, Jr.
_____

Hon. Robert E. Littlefield, Jr.
Chief U.S. Bankruptcy Judge